# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

    Case No. 17-10005-01-EFM

REU CHARLES CHAMBERLAIN,

    *Defendant.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Reu Charles Chamberlain's Motion for Compassionate Release (Doc. 68) and Motion to Reduce Sentence – First Step Act, Motion to Appoint Counsel (Doc. 70). He seeks early release from prison due to a significant knee injury and the need for surgery, and the COVID-19 pandemic. The government opposes Defendant's motions. For the reasons stated in more detail below, the Court grants Defendant's motions.

### I.    Factual and Procedural Background

On June 26, 2017, Defendant pleaded guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343. On September 11, 2017, Defendant was sentenced to 28 months' imprisonment. After his release from prison, Defendant violated several conditions of his supervised release. On July 28, 2020, Defendant was sentenced to 12 months and one day imprisonment to be followed

by an 18-month term of supervised release. Defendant's supervised release also has a special condition of a 180-day confinement in a residential reentry center ("RRC").

Defendant is 34 years old, and he is currently incarcerated at Leavenworth USP. There have been 735 positive cases in the facility in which Defendant is housed, and no inmates have died.[1] Currently, there are 59 active inmate cases, five active staff cases, and no pending inmate tests. Defendant's projected release date is March 31, 2021.

On November 10 and 16, 2020, Defendant filed motions requesting release from prison and the appointment of counsel to assist him in these motions. He seeks early release from prison to seek treatment for a knee injury, specifically a torn meniscus for which he needs surgery. Due to the current COVID-19 environment and his potential release date, surgery or a consult is unlikely while he remains incarcerated. He also states that he has hypertension and asthma which makes him more susceptible to severe illness if he were to contract COVID-19.

District of Kansas Standing Orders 19-1 and 20-8 appoint the Federal Public Defender ("FPD") to represent indigent defendants who may qualify to seek compassionate release under § 603 of the First Step Act and brought on grounds related to the COVID-19 pandemic. The FPD entered an appearance and filed a reply on behalf of Defendant.

## II. Legal Standard

The First Step Act amended the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), to allow a defendant to file his own motion for release.[2] It allows defendants to seek early release from prison provided certain conditions are met. First, "a criminal defendant may file a motion

---

[1] Federal Bureau of Prisons, *COVID-19 Coronavirus: COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited January 19, 2021).

[2] *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

for compassionate release only if: '(1) he has exhausted all administrative rights to appeal the [Bureau of Prisons' ("BOP")] failure to bring a motion on his behalf, or (2) 30 days have passed since the warden of his facility received his request for the BOP to file a motion on his behalf.' "[3] The administrative exhaustion requirement is jurisdictional and cannot be waived.[4]

Next, if a defendant satisfies the exhaustion requirement, the Court may reduce the defendant's sentence, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, if the Court determines: (1) "extraordinary and compelling reasons warrant such a reduction;" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c) . . . and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community."[5]  Finally, the Court must ensure that any reduction in the defendant's sentence under this statute is "consistent with applicable policy statements issued by the Sentencing Commission."[6]

---

[3] *United States v. Boyles*, 2020 WL 1819887, at *2 (D. Kan. 2020) (citing *United States v. Alam*, 2020 WL 1703881, at *2 (E.D. Mich. 2020)); *see also* 18 U.S.C. § 3582(c)(1)(A).

[4] *See United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence); *United States v. Read-Forbes*, 454 F. Supp. 3d 1113, 1116-17 (D. Kan. 2020) (examining the text, context, and historical treatment of § 3582(c)'s subsections to determine that the exhaustion requirement is jurisdictional); *Boyles*, 2020 WL 1819887, at *2 (determining that exhaustion of administrative remedies is a prerequisite for the court's jurisdiction); *cf. United States v. Younger*, 2020 WL 3429490, at *3 (D. Kan. 2020) (reasoning that the Sixth Circuit's approach articulated in *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), is "highly persuasive," and concluding that § 3582(c)(1)(A)'s exhaustion requirement is a claims-processing rule).

[5] 18 U.S.C. § 3582(c)(1)(A)(i)-(ii).

[6] *Id.*; *see also Dillon v. United States*, 560 U.S. 817, 819 (2010) (holding that the Sentencing Commission's policy statement regarding 18 U.S.C. § 3582(c)(2) remains mandatory in the wake of *United States v. Booker*, 543 U.S. 220 (2005)).

### III.     Analysis

Defendant seeks early release based on his need to seek medical treatment for a significant knee injury he sustained while in prison. He also states that he has hypertension and asthma which makes him more susceptible to severe illness should he contract COVID-19 in prison. The government asserts that Defendant is not an appropriate candidate for early release.

**A.     Exhaustion**

Defendant has satisfied the exhaustion requirement described in § 3582(c). He requested compassionate release from the Warden on October 17, 2020. Thirty days have passed since Defendant submitted his request. The government also admits that Defendant meets the exhaustion requirement. Thus, the Court will proceed and determine the merits of Defendant's motion.

**B.     Extraordinary and Compelling Reasons**

Defendant next asserts that he presents an extraordinary and compelling reason warranting release based on a serious medical condition that has been left untreated due to the COVID-19 pandemic. Defendant tore his MCL and meniscus in his left knee in August 2020 at the Butler County Jail awaiting his designation to the BOP. On August 24, 2020, a physician recommended surgery on Defendant's meniscus after his MCL healed in approximately six weeks. Defendant has not had surgery, and due to the current COVID-19 environment, it is unlikely to happen while he is incarcerated. The Court finds that this medical condition, and the need for surgery, presents an extraordinary and compelling reason. Accordingly, the Court will move on to consider the § 3553(a) factors.

### C.  Section 3553(a) Factors

Finally, the Court considers whether Defendant's sentence reduction would comply with the sentencing factors enumerated in 18 U.S.C. § 3553(a) "to the extent that they are applicable."[7] Some of these factors include the nature and circumstances of the offense; the need for the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentence disparities.[8]

Defendant pleaded guilty to the serious offense of two counts of wire fraud. The underlying facts include that Defendant provided false identification on two separate occasions to purchase two Dodge Challengers. The sentencing guideline range was 51 to 63 months. Defendant received a below-guideline sentence of 28 months.

After completing this sentence, Defendant violated his supervised release conditions by testing positive for controlled substances. In addition, he failed to submit urine samples, attempted to defeat the urine testing procedures, and traveled out of state to gamble. On July 28, 2020, the Court revoked his supervised release and sentenced Defendant to 12 months and one day.

Given the scope of Defendant's offense and violations, the Court would generally not be inclined to release Defendant. However, at this point, Defendant has served approximately 70 percent of his sentence with good time credit, and he is scheduled to be released on March 31, 2021. Thus, most of his prison sentence has been served.

As a term of Defendant's supervised release, he is required to be released to RRC for 180 days. In light of Defendant's current medical conditions and the need for surgery, the COVID-19

---

[7] 18 U.S.C. § 3582(c)(1).

[8] 18 U.S.C. § 3553(a).

pandemic, and the applicable factors under § 3553(a), the Court finds that the release of Defendant, approximately two months earlier than scheduled, to be appropriate. Thus, the Court finds that a sentence of time served is sufficient, but not greater than necessary, to reflect the seriousness of his offense, afford adequate deterrence, and protect the public. Accordingly, the Court reduces Defendant's sentence of 12 months and one day to time served. Defendant shall remain subject to his special and standard terms of supervised release of 18 months, which will begin immediately upon his release.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Compassionate Release (Doc. 68) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Reduce Sentence – First Step Act, Motion to Appoint Counsel (Doc. 70) is **GRANTED**. The Court reduces Defendant's sentence to time served.

**IT IS FURTHER ORDERED** that this Order is stayed until the verification and/or establishment of RRC placement, to make appropriate travel arrangements, and to ensure Defendant's safe release. Defendant shall be released as soon as RRC placement is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Defendant to travel. There shall be no delay in ensuring travel arrangements are made.

**IT IS FURTHER ORDERED** that Defendant's term of supervised release will begin immediately upon his release from the Bureau of Prisons. All previously imposed terms, standard conditions, and special conditions of supervised release remain in effect. During the first 14 days of his term of supervised release, Defendant shall self-quarantine.

**IT IS SO ORDERED**.

Dated this 19th day of January, 2021.

                                          ERIC F. MELGREN
                                          UNITED STATES DISTRICT JUDGE